# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| **TITLEMAX OF ALABAMA, INC.,** | |
| Appellant, | |
| v. | Case No.: 5:22-cv-00967-MHH |
| **NEIL WILLS,** | |
| Appellee. | |

## OPINION AND ORDER

This bankruptcy appeal concerns the interplay between 11 U.S.C. § 362 and a pawnbroker's rights under the Alabama Pawnshop Act, Alabama Code §5-19A-1 *et seq*. TitleMax of Alabama, Inc. challenges the "Judgment on Complaint" the United States Bankruptcy Court for the Northern District of Alabama issued in an adversary proceeding Neil Wills brought against TitleMax. Before Mr. Wills filed for bankruptcy, he pawned his vehicle's title to TitleMax. In his adversary proceeding, Mr. Wills alleged that TitleMax violated the automatic bankruptcy stay by calling him after he filed for bankruptcy. The bankruptcy court concluded that TitleMax violated § 362(a)(6) and awarded attorney's fees to Mr. Wills pursuant to § 362(k). TitleMax contends the bankruptcy court erred because when Mr. Wills filed for

bankruptcy, he did not have an interest in the pawned vehicle, so the automatic stay did not apply. This opinion resolves TitleMax's appeal.

## I.

On October 1, 2021, Mr. Wills pawned the title to his 2005 Nissan Titan to TitleMax for $2,961.83. (Doc.17-58, p. 21). The terms of the transaction appear in a pawn ticket Mr. Wills and TitleMax executed. The contract provides that the pawn would mature 30 days later on October 31, 2021, and in exchange for the $2,961.83 advance of funds, TitleMax would hold a security interest in the vehicle and title. (Doc. 17-58, p. 22). The contract states that Mr. Wills would be in default if he failed to pay $2,961.83 plus a pawnshop charge in the amount of $355.12 by October 31, 2021. (Doc. 17-58, p. 22). The contract provides that if Mr. Wills "fail[s] to redeem the Vehicle within 30 days following the Maturity Date . . . then the Vehicle shall be forfeited to and absolute right, title, and interest in and to the Vehicle shall vest in [TitleMax]." (Doc. 17-58, p. 22). The contract states that the loan provided by TitleMax is nonrecourse and that Mr. Wills is not obligated to redeem the vehicle or make payments to TitleMax. The contract additionally states that "[n]othing in this Agreement gives [TitleMax] any recourse against [Mr. Wills] personally other than [TitleMax's] right to take possession of the Vehicle upon [Mr. Wills's] default, and to sell or otherwise dispose of the Vehicle in accordance with the Alabama Pawn Shop Act." (Doc. 17-58, p. 22).

Mr. Wills did not pay TitleMax by the October 31, 2021 maturity date, and he did not redeem the vehicle before the 30-day grace period expired on November 31, 2021. Early in December 2021, TitleMax hired a towing company to repossess the vehicle. (Doc. 17-58, p. 18, ¶ 10). After two unsuccessful repossession attempts, TitleMax and the towing company "agreed that no further repossession attempts would be made at that time for safety reasons." (Doc. 17-58, p. 18, ¶ 11).

On December 3, 2021, Mr. Wills filed a petition for Chapter 13 bankruptcy and listed TitleMax as a creditor. (Doc. 17-11). On December 6, 2021, the Bankruptcy Noticing Center notified TitleMax of Mr. Wills's bankruptcy proceeding. (Doc. 17-13).

On December 17, 2021, Mr. Wills filed an adversary proceeding against TitleMax. (Doc. 17-35). Mr. Wills alleged that after he filed for bankruptcy, he received phone calls from TitleMax between December 7, 2021, and December 9, 2021. Mr. Wills alleged that under § 362(a)(6), these calls violated the automatic bankruptcy stay as post-petition attempts to collect a prepetition debt. (Doc. 17-35, pp. 3–4, Doc. 17-40, pp. 3–4). TitleMax responded to Mr. Wills's complaint; TitleMax denied that it had violated the automatic stay. (Doc. 17-38, Doc. 17-41, Doc. 17-43).

In his proposed Chapter 13 plan, Mr. Wills listed the 2005 Nissan Titan as an asset of his estate and TitleMax as a secured creditor, and he proposed in his plan of

3

reorganization to repay TitleMax over the life of the plan. (Docs. 17-15, 17-16). TitleMax objected to Mr. Wills's proposed plan, arguing that under Alabama law, the 2005 Nissan Titan was not part of the bankruptcy estate and could not be treated as a claim under § 1322(b)(2). (Doc. 17-25).

On May 26, 2022, Mr. Wills filed a motion to compel and motion for sanctions against TitleMax in the adversary proceeding. (Doc. 17-51). After holding a hearing on Mr. Wills's motion, the bankruptcy court ordered both parties to file affidavits and briefs. The bankruptcy court instructed the parties to explain when TitleMax first received notice that Mr. Wills filed bankruptcy, whether TitleMax took action to collect a prepetition debt owed by Mr. Wills after TitleMax received notice that Mr. Wills had filed bankruptcy, and whether Mr. Wills could receive damages. (Doc. 17-57).

In a brief, TitleMax acknowledged that a TitleMax representative received a phone call regarding Mr. Wills's bankruptcy proceeding on December 3, 2021, and that TitleMax received formal notification from the Bankruptcy Noticing Center on December 6, 2021. (Doc. 17-58). TitleMax stated that because of an inadvertent error in coding Mr. Wills's account, TitleMax representatives contacted Mr. Wills after the company received notice of his bankruptcy proceeding. TitleMax stated that it "does not dispute that its communications with the Debtor after the filing of the bankruptcy case technically violated the automatic stay" but argued that damages

awarded to Mr. Wills should be reduced because Mr. Wills and his counsel "failed to mitigate the damages (if any) caused by TitleMax's inadvertent violation." (Doc. 17-58, p. 6). TitleMax also argued that the automatic stay did not apply because Mr. Wills had no interest in the vehicle when he filed for bankruptcy. (Doc. 17-58, pp. 11–14).

During a July 18, 2022, hearing in Mr. Wills's Chapter 13 case, the bankruptcy court sustained TitleMax's objection to the proposed Chapter 13 plan. Based on the Eleventh Circuit's decision in *In re Eldridge*, the bankruptcy court concluded that the 2005 Nissan Titan was not part of Mr. Wills's bankruptcy estate. *In re Wills*, No. 21-82094-CRJ13 (N.D. Ala. Bankr.) (Doc. 88, p. 4) (citing *In re Eldridge*, 2021 WL 4129368, at *3 (11th Cir. Sept. 10, 2021)). The bankruptcy court then proceeded to Mr. Wills's adversary case against TitleMax and awarded Mr. Wills attorney's fees based on TitleMax's statement in its brief that it "technically" violated the automatic stay. (Doc. 17-8, pp. 6, 8). The bankruptcy court rejected TitleMax's argument that the automatic stay did not apply because the vehicle was not part of the bankruptcy estate. The bankruptcy court reasoned that even if TitleMax genuinely believed that the vehicle was not property of the estate, the automatic stay prevented TitleMax from contacting Mr. Wills or exercising other remedies. (Doc. 17-8, p. 8). The bankruptcy court noted that TitleMax did not file a motion for relief from the

5

automatic stay. (Doc. 17-8, p. 8). The bankruptcy court awarded $15,525.00 in attorney's fees to Mr. Wills. (Doc. 17-8, p. 9; Doc. 17-61). This appeal followed.

## II.

A district court assumes the role of an appellate court when reviewing the decision of a bankruptcy court. 28 U.S.C. § 158(a). In resolving a bankruptcy appeal, the district court reviews the bankruptcy court's factual findings for clear error and the bankruptcy court's legal conclusions de novo. *In re Coady*, 588 F.3d 1312, 1315 (11th Cir. 2009).

Section 362(a)(6) provides that the filing of a bankruptcy petition "operates as a stay, applicable to all entities, of . . . any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title." 11 U.S.C. § 362(a)(6). The Bankruptcy Code defines a "claim" as a "right to payment" or a "right to an equitable remedy for breach of performance if such breach gives rise to a right to payment." 11 U.S.C. § 101(5); *SuVicMon Dev., Inc. v. Morrison*, 991 F.3d 1213, 1221 n.4 (11th Cir. 2021). Absent conflicting federal law, state law controls the issue of a creditor's "right to payment." *Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*, 549 U.S. 443, 451 (2007).

TitleMax argues that the bankruptcy court erred in finding that TitleMax violated § 362(a)(6) because by the time Mr. Wills filed for bankruptcy, by operation of Alabama law, Mr. Wills's interest in the vehicle had automatically extinguished

and transferred to TitleMax, and Mr. Wills had no obligation to pay TitleMax. That is, TitleMax argues that it did not have a "claim" against Mr. Wills as defined by the Bankruptcy Code because TitleMax did not have a right to payment from Mr. Wills.

The pawn transaction between Mr. Wills and TitleMax is governed by the pawn ticket and the Alabama Pawnshop Act. Under the APA, a pawn transaction gives a pawnbroker "a lien on the pledged goods pawned for the money advanced and the pawnshop charge owed, . . . subject to the rights of other persons who have an ownership interest or prior liens in the pledged goods." Ala. Code § 5-19A-10(a). The pledgor has "no obligation to redeem pledged goods or make any payment on a pawn transaction." Ala. Code § 5-19A-6. If "[p]ledged goods [are] not redeemed on or before the maturity date . . . fixed and set out in the pawn ticket . . . the pawnbroker [must hold the goods] for 30 days following that date . . . [for] rede[mption] or repurchase[ ] by the pledgor . . . ." Ala. Code § 5-19A-10(b). "Pledged goods not redeemed within 30 days following the originally fixed maturity date shall be forfeited to the pawnbroker and absolute right, title, and interest in and to the goods shall vest in the pawnbroker." Ala. Code § 5-19A-6. The terms of the pawn ticket are consistent with these provisions of the APA. (Doc. 17-58, p. 22).

Here, when Mr. Wills filed for bankruptcy on December 3, 2021, the pawn had matured, the statutory redemption period had expired, Mr. Wills had forfeited the 2005 Nissan Titan, and "absolute right, title, and interest in and to the [vehicle]"

7

had vested in TitleMax. Ala. Code § 5-19A-6. Under the terms of the pawn ticket and provisions of the APA, Mr. Wills had no obligation to repay TitleMax. Ala. Code § 5-19A-6. Under these circumstances, TitleMax did not have a "claim" against Mr. Wills as defined by the Bankruptcy Code because TitleMax had no right to seek payment from Mr. Wills. Instead, as of December 3, 2021, TitleMax owned the 2005 Nissan Titan outright. *Cf. In re Northington*, 876 F.3d 1302, 1315 (11th Cir. 2017) (explaining under Georgia's pawn statute, which is similar to the APA, that after redemption period expired, "TitleMax didn't have a mere 'claim'—it had (by operation of Georgia law) a 2006 Dodge Charger").[1]

In concluding that TitleMax violated § 362(a)(6) of the automatic stay, the bankruptcy court did not make factual findings concerning the purpose of TitleMax's

---

[1] Mr. Wills argues that TitleMax filed a proof of claim in his Chapter 13 bankruptcy proceeding, and the filing shows that TitleMax "felt that [he] still owed the debt for the security agreement" and thus "elect[ed] not to enforce [its] right to take possession of the vehicle, but choos[e] instead to pursue a different collection arrangement." (Doc. 10, pp. 9–10). As the Eleventh Circuit observed in *In re McLean*, "the Bankruptcy Code explicitly contemplates that creditors may file unenforceable claims in the bankruptcy court while an automatic stay is in effect." 794 F.3d 1313, 1321 (11th Cir. 2015) (citing 11 U.S.C. § 502(b)(1) (recognizing that claims may be invalid "under [an] agreement or applicable law for a reason other than because such claim is contingent or unmatured" and authorizing a debtor's objection to a proof of claim on that basis)). Additionally, "the legislative history to § 502(b)(1) indicates that, if the agreement between a debtor and creditor makes a loan nonrecourse, then a deficiency claim against the debtor is unenforceable," and "[w]here a debtor has no personal liability for a claim under state law, . . . the claim must be disallowed under § 502(b)(1)." 1 Bankruptcy Law Manual § 6:12 (5th ed.). That TitleMax filed a proof of claim does not establish that the company had a right to payment from Mr. Wills. Whether TitleMax had a right to payment is a question of state law. *Travelers Cas. & Sur. Co. of Am.*, 549 U.S. at 451. As discussed in this opinion, because Alabama law provides that pawn transactions like the one at issue here are nonrecourse, and because all interest in the vehicle had already vested in TitleMax, TitleMax did not have an enforceable "claim" against Mr. Wills when Mr. Wills sought bankruptcy protection.

calls to Mr. Wills or the parties' interest in the 2005 Nissan Titan.[2]  Instead, the bankruptcy court relied on this statement from TitleMax's brief: "TitleMax does not dispute that its communication with the Debtor after the filing of the bankruptcy case technically violated the automatic stay."  (Doc. 17-58, p. 6).  The bankruptcy court construed this statement as an admission that TitleMax called Mr. Wills to attempt to collect on a pre-petition claim in violation of § 362(a)(6).

Courts have discretion as to whether to treat statements in a party's brief as a binding admission. *First Nat. Bank of Alexander City v. Avondale Mills Bevelle Emps. Fed. Credit Union*, 967 F.2d 556, 560 (11th Cir. 1992) (citing *American Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 227 (9th Cir. 1988)); *City Nat. Bank v. United States*, 907 F.2d 536, 544 (5th Cir. 1990) (citing *Young & Vann Supply Co. v.*

---

[2] Courts interpreting § 362(a)(6) have explained not all communications from a creditor to a debtor are prohibited by the automatic stay. *See, e.g., Pertuso v. Ford Motor Credit Co.*, 233 F.3d 417, 423 (6th Cir. 2000) ("Something more than mere contact must be alleged in order to state a claim under § 362."); *In re Sciortino*, 561 B.R. 260, 273 (Bankr. N.D. Ga. 2016) (quoting *Cousins v. CitiFinancial Mortg. Co.* (*In re Cousins*), 404 B.R. 281, 287 (Bankr. S.D. Ohio 2009) ("Determining whether a violation of the automatic stay occurs can be complicated and depends on such specifics as what type of communication was sent to the debtor and whether the communication had a purpose other than collection of the debt outside the scheme contemplated by the Bankruptcy Code.")).  For example, in determining whether a creditor's communication violates the automatic stay, courts have considered whether the communication was coercive, harassing, threating, or otherwise pressured the debtor to pay a pre-petition debt. *In re Sciortino*, 561 B.R. at 273 (collecting cases); *In re Estrada*, 439 B.R. 227, 230 (Bankr. S.D. Fla. 2010) (first citing *Jamo v. Katahdin Federal Credit Union*, 283 F.3d 392 (1st Cir. 2002), and then citing *In the Matter of Duke*, 79 F.3d 43 (7th Cir. 1996) ("Courts generally agree that a creditor may send a postpetition letter to a debtor proposing a reaffirmation agreement without violating the automatic stay. However, the creditor's communication regarding reaffirmation must not be threatening or coercive.").

9

*Gulf, F. & A.R. Co.*, 5 F.2d 421, 423 (5th Cir. 1925)).[3]  When a statement in a brief is susceptible to multiple interpretations, a court abuses its discretion in treating the statement as an admission when the party's "conduct or declared intentions" do not support the court's interpretation. *First Nat. Bank of Alexander City*, 967 F.2d at 560 (quoting *Pollock v. Birmingham Trust Nat'l Bank*, 650 F.2d 807, 811 (5th Cir. Unit B July 1981)).

Here, as the bankruptcy court observed, TitleMax repeatedly denied that it violated the automatic stay. (Docs. 17-38, 17-41, 17-43; *see also* Doc. 17-8, p. 6 ("[TitleMax] filed an answer and later an amended answer, neither of which admitted that there was any violation of the automatic stay that needed to be addressed.").  In response to Mr. Wills's motion to compel, the bankruptcy court expressed concern about how the adversary case was proceeding. (Doc. 17-7, pp. 3–4). The bankruptcy court stayed discovery and asked the parties to address three issues: (1) whether TitleMax had notice of the automatic stay, (2) whether TitleMax took action that violated the stay, and (3) whether Mr. Wills had damages. (Doc. 17-1, pp. 4–5). The bankruptcy court ordered the parties to submit affidavits and briefs regarding these issues. (Doc. 17-7, pp. 4–5, Doc. 17-57). In response to the bankruptcy court's order, TitleMax represented in its brief that it received notice of Mr. Wills's

---

[3] The Eleventh Circuit has adopted the former-Fifth Circuit's decisions as of September 30, 1981 as binding precedent. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir.1981) (en banc).

bankruptcy proceeding on December 6, 2021, and that TitleMax representatives called Mr. Wills after it received this notice. With respect to damages, TitleMax stated:

> TitleMax does not dispute that its communication with the Debtor after the filing of the bankruptcy case technically violated the automatic stay. However, the Debtor and his counsel failed to mitigate the damages (if any) caused by TitleMax's inadvertent violation and, as such, any actual damages, fees, and costs awarded should be reduced to account for this failure to mitigate. Additionally, TitleMax's conduct was in no way intentional, malicious, or egregious, and, as such, there are no grounds for an award of punitive damages in this case.

(Doc. 17-58, p. 6). After addressing the topics the bankruptcy court ordered TitleMax to address, TitleMax argued that the automatic stay did not apply to the vehicle. (Doc. 17-58, pp. 11–14).

TitleMax's statement that it "technically" violated the automatic stay is amendable to two interpretations. It could be an admission, as construed by the bankruptcy court, that TitleMax called Mr. Wills for the purpose of attempting to recover a pre-petition claim in violation of § 362(a)(6). On the other hand, it could be construed as a statement about whether damages were warranted under the circumstances. Considering that TitleMax repeatedly denied violating the automatic stay; that the company's statement concerning a technical violation was in response to the bankruptcy court's order requiring briefing on a narrow set of issues that did not include the applicability of the automatic stay in the first instance; that TitleMax argued, after addressing the bankruptcy court's questions, that the automatic stay did

11

not apply to the company; and that there are no factual findings concerning the purpose of the phone calls about which Mr. Wills complained, the bankruptcy court abused its discretion in construing the statement in TitleMax's brief as an admission that TitleMax violated the automatic stay. The record in this case indicates that TitleMax did not violate the automatic stay, technically or otherwise. In the absence of factual findings that contradict the force of the APA (which vested all rights and title in the vehicle at issue in TitleMax before Mr. Wills sought bankruptcy protection) or otherwise provide the basis for a fee award concerning the calls at issue, the bankruptcy court lacked a basis for an award of fees to Mr. Wills.[4]

Therefore, the judgment of the bankruptcy court is **REVERSED**, and the matter is **REMANDED** to the bankruptcy court for further proceedings consistent with this opinion. The Clerk shall please **CLOSE** this file.

**DONE** and **ORDERED** this July 27, 2024.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE

---

[4] To be sure, the litigation concerning TitleMax's post-petition calls to Mr. Wills could have been avoided had TitleMax filed a motion with the bankruptcy court seeking a declaration that the company was not subject to the automatic stay because, as a matter of Alabama law, the stay did not apply to TitleMax. The Court understands the bankruptcy court's frustration with the time and resources spent on a matter that could have been resolved more expeditiously. As the bankruptcy court noted, between the parties, there was plenty of blame to go around for the expansion of the AP. (Doc. 17-8, pp. 6, 8). Still, for the reasons discussed, the record does not support the fee award in this case.